United States Courts
Southern District of Texas
FILED
AUG 21 2020
David J. Bradley, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALEJANDRO EVARISTO PEREZ<br>    Plaintiff, | §<br>§<br>§ | |
| V. | §<br>§<br>§ | CIVIL ACTION NO.<br>4:20-CV-02188 |
| LINKEDIN CORPORATION<br>    Defendant. | §<br>§<br>§ | |

## OPPOSED MOTION TO DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

The Plaintiff files this Opposed Motion to DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM pursuant to FED. R. CIV. P. 12(b)(6) and respectfully shows as follows.

1.) The Defendant Lawyers are intentionally breaking the rules and creating delays to obstruct justice with possible negative National consequences.

2.) The Defendant misrepresented the case as a "First Amendment Violation Case" when the Plaintiff's complaint form clearly states that this case is a "Free Speech Violation Case" and the Court wisely approved such scope.

3.) Inversing *Schenck v. United States* logic proves Plaintiff's legal case quickly and favorably, because the Plaintiff has the right to use facts to incite actions that can save others and the Defendant is behaving worse than Charles Schenck.

1

4.) Plaintiff expressed Political Speech, which has Preferred Position and always has highest protection by Courts by striking down any law, regulation, executive act, and/or even, simple corporate user agreements.

## ***INTRODUCTION***

The Plaintiff filed a Free Speech violation case by a corporate entity (LinkedIn Inc.) that in actuality behaves and acts as a state actor when censoring material and eliminating the cyber existence of the Plaintiff against the Plaintiff's free will (traditional state actions of censorship and elimination of enemies) from a social media public forum filled US state actors and over 7,000 consenting contacts connected to the Plaintiff, when the Plaintiff exercised Political Speech criticizing foreign state actors, the Chinese Communist Party. The Chinese Communist Party has a record of crimes against humanity, forceful territorial expansion (ex. Tibet), a record of deception, active bioweapons facilities, pictures of Bill Gates (Microsoft is the parent corporation of the Defendant) hand shaking Xi Jinping's hand (the primary leader of such criminal Marxist organization), and whose political agenda of "Unrestricted Warfare" directly focuses in undermining the US Constitution by manipulating private corporations to perform un-constitutional state actions in US soil as reported by Ret. US General Robert Spalding, the Trump White House, and the US National Security Council. The Plaintiff requests the help from US Federal Court of the Honorable Judge Nancy F. Atlas in the promotion and defense of the Plaintiff's Constitutional right of Freedom of Speech against the misguided Defendant that performed illegal state actions on behalf of the foreign state actors who has and uses a documented military doctrine to destroy the US Constitution in US soil.

## **LEGAL ARGUMENT**

The Court should approve this opposing motion to deny the motivant's motion of DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and any future similar dismissal motions from the Defendant based on 3 following factors.

1.) **The Defendant Lawyers are intentionally breaking the rules and creating delays to obstruct justice with possible negative National consequences.** The Defendant has knowledgeable experience talented lawyers that are intentionally not following the Court Procedures and Forms of the Honorable Nancy F. Atlas when the Defendant fails to make serious and timely efforts to confer with opposing counsel (the Plaintiff). It is unfair to take advantage of a Pro Se Plaintiff's lack of knowledge of procedures to win a case over the content and substance of our fundamental Constitutional Right in a National Security context. Should the American People lose their voice or feel fear to exercise their right to Free Speech and/or experience denials of service in US soil due to legal shortcuts? Will Americans' devices and service accounts stop working, because we criticized the CCP and a short-sighted Corporations allowed for the weaponization of User Agreements in US soil against Americans? The Defendant has already violated the Court's rule intentionally and thus, the Plaintiff feels like settling or a Jury Trial are the only appropriate option for the Defendant unless the Honorable Judge Nancy F. Atlas has other recommendations.

2.) **The Defendant misrepresented the case as a "First Amendment Violation Case" when the Plaintiff's complaint form clearly states that this case is a "Free Speech Violation Case" and the Court wisely approved such scope.** "This is a Free Speech violation case…" is literally the first line of the Plaintiff's Complaint Form. Whether intentional to control the legal narrative or un-intentional due to lack of understanding of the English lexicon, the Defendant misrepresented the case. "Free Speech" is short for the technical term of the "Freedom of Speech" right. <u>"Freedom of Speech" is defined as "*the right to express any opinions without censorship or restraint"*.</u> The Defendant's argument fails basic Boolean logic by generating a 'False' result, because the English language's legal definition of right to "Freedom of Speech" does not equal the legal definition of "The First Amendment". And vice versa. The First Amendment mentions the "Freedom of Speech" among other Constitutional Rights and how Congress (the US Executive Branch) will conserve those rights by refusing to make laws to prohibiting such constitutional rights. Regardless, the Plaintiff re-iterates that by definition and basic Boolean logic, Free Speech is defined as the right to express any opinions without censorship or restraint. <u>The Plaintiff wants the Court, FDR fans, any American, and/or any Jury to notice that the definition of Free Speech makes no difference between government, civic, military, corporate, location, scientific, times, mediums, spaces, public domains, private domains, doctrines, philosophies, ideologies, and/or any other scope in its application.</u> Such independence and freedom in scope nullifies the Defendant's false claims that cyber assassinating the Plaintiff (an US War Veteran) to safeguard the reputation of the monstrous CCP's (a foreign hostile state actor) as a private purpose and

4

the primary purpose of their business (Lloyd Corp., Ltd v. Tanner, Howard v Am. Online, Inc., Forbes vs Facebook, etc...). But is LinkedIn's primary purpose to be a thought police of ideas or a forum of professionals connected by consent, reputation, skills, and influence to exchange ideas and start professional conversations in a free *laisse faire* format? If the Defendant behaves like a "Thought Police" on behalf of the CCP and lies about it, can any rational American believe the real intentions of the Defendant purely based on actions? In contrast, the definition of the First Amendment is "*Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.*" The Plaintiff has no grievance directed at our US Congress. In fact, the Plaintiff is happy with our US Congress and wishes all our Congressmen and all our Congresswomen well. Therefore, "Free Speech" and "The First Amendment" are two separate unique and distinct self-evident concepts with different scopes. The Plaintiff is very proud of the fact that the Honorable Judge Nancy F. Atlas wisely choose to support the Plaintiff's complaint based on the "Free Speech" scope. Such a selection can allow for new and possible unprecedented actions for the better defend and preservation of our US Constitution and our civic liberties against Foreign and Domestic Enemies (or "Frenemies") with sophisticated military doctrines to undermine US civic freedoms, records of crimes against humanity, and repeatable unethical behavior. Can FDR's 4 Freedoms vision finally start to bare fruit for all Americans to enjoy in such a unique case by setting the proper legal precedence needed to safeguard our Freedom of Speech? Will we concluded that "Lawful Free Speech always win" in a Free Society in a peaceful

assembly that consented to listen regardless of forum in their free time? If viewed purely as a "Free Speech" violation as defined by English Legal Definition of "Freedom of Speech", then the majority of cases associated the 1st Amendment cited by the Defendant become independent "nice to know" references and immaterial. Where is the word "corporate" or "except for corporations" or "1st Amendment" in the definition of "Freedom of Speech"? The right of Freedom of Speech is the parent of the 1st Amendment and unique independent "self-evident" US Constitutional Right. Without our US Constitutional Rights as parent constructs, what would the 1st Amendment even mean? Congress shall make no law or prohibit of (blank), (blank), and (blank)? The 1st Amendment is an empty meaning-less legal construct without our US Constructional Rights as parent constructs to give any context, basis, or meaning to the 1st of all US Amendment. Regardless of the Defendant's intentional or unintentional confusion, this is a "Freedom of Speech" violation case and will continue to be "Freedom of Speech" violation case as approved by the Court.

3.) **Inversing *Schenck v. United States* logic proves Plaintiff's legal case quickly and favorably, because the Plaintiff has the right to use facts to incite actions that can save others and the Defendant is behaving worse than Charles Schenck.** <u>The Plaintiff wants the Court, FDR fans, any American, and/or any Jury to know that the Defendant willing and intentionally omitted to the mentioned of *Schenck v. United States (249 US 47 [1919])*.</u> This is one of the most famous and most popular 1st Amendment violation cases. Why did the Defendant intentionally avoided this famous case by the Honorable Justice Oliver Wendell Holmes Jr.? IAW *Schenck v. United States*, the Court determined

6

that an American's Freedom of Speech does not include the right to use lies (false witness) to incite actions that would harm others (ex. "If a liar is shouting 'fire' in a crowded theater to create a panic when there is no fire."). If that is true, the inverse is also true. <u>The inverse of this famous *Schenck v. United State* case would mean that an American's Freedom of Speech does include the right to use facts (true witness [the inverse of false witness]) to incite actions that would save others [the inverse of harming others]</u> (ex. "Like a US War Veteran with honorable discharges electronically posting to his 7,000 professional social network, who peacefully assembled in a social platform, to explain the dangers presented and executed by the Chinese Communist Party, who has a record of crimes against humanity, territorial take-overs (ex. Tibet), human organ harvesting operations, etc..."). Logical smart Americans with good hearts have a legal and moral obligation to "shout 'fire' in a theater" if there is indeed a real fire inside a theater to save other people's lives. Or would the Defendant prefer that American die in a fire inside a theater without yelling the fact that there is a fire about to consume them all? Is quietly letting hundreds of Americans burn alive in a theater the Defendant's idea of a logical response and Freedom of Speech? Is it ethical to punish the American hero who is telling you the truth? Should the American people listen to their honorable War Heroes or listen to the autocratic Chinese Communist Parties and their misguided CCP supports? What happens when the Chinese Communist Party is the "clear and present danger" and the CCP supporters are too greedy about Chinese markets to want to see a "clear and present danger"? Why does the Defendant willing choose to ignore the 1989 Tiananmen Square massacres? Why does the Defendant willing choose to ignore the hostile takeover of Tibet? Has the Defendant normalized the CCP's unethical behavior in their LinkedIn

corporate culture? Who will step up to inform their fellow Americans what is going when the WHO (the World Health Organization) has failed and yellow journalism (AKA fake news. Not a new concept.) is propagated by foreign state actors (reports over 70,000 fake social media accounts used by the CCP) and mass media desire for ratings ("If it bleeds, it leads." mentality)? Is it ethical to silence Americans' Freedom of Speech, because of hostile foreign state actors? If it is right to punish a liar "shouting fire" when there is not fire, then, by inverse, then, it must be right to reward the hero "shouting fire" when there is indeed an actual real fire. However, electronic postings on a social media forum are more relaxed and asynchronized when compared to "shouting fire in a theater" that can generate a "Fight or Flight" panic response. Due to mixture of pride and incompetence, the misguided Defendant punished the Plaintiff, who is the hero peacefully telling the truth in a peaceful assembly via his LinkedIn account in order to warn his 7,000 unique individuals who consented to be his professionally network about the dangers of the Chinese Communist Party. If anything, the Defendant is behaving like Charles Schenck by virtually burning the profile of an anti-CCP US Patriot and thus the Defendant indirectly supporting the Chinese Communist Party's Unrestricted Warfare (ex. Information Warfare) against the United States of America during a US National Emergency started by CCP's COVID19 bioweapon pandemic. Did Charles Schenck have the right to burn other people's draft numbers and suppress others from a US military effort? The Plaintiff provides the following tentative samples of current evidence to the Court to ensure validation of Plaintiff's factual allegations (*Bell Atl. Corp. v Twomby & Ashcroft v. Iqbal.* Cited by Defendant.) regarding the Chinese Communist Party, the military application of the CCP's "Unrestricted Warfare" Multi-Operational Domain

8

Warfare, and his desire to warn his fellow Americans regarding CCP's military doctrine that is endangering the US Constitution and our civic liberties as advised by Ret. US General Robert Spalding.

- 1 Copy of the email exchanges between Plaintiff and Defendants' Moderators
    - Type: email communication
    - Author: alejandro.evaristo.perez@gmail.com, linkedin_support@cs.linkedin.com
    - Year: 2020
    - Pages: 6
    - LinkedIn Case: 200509-001944

- 1 Copy of the original version of "Unrestricted Warfare" book
    - Type: Military Multi-Domain Operations Doctrine Text
    - Author: PLA Colonel Qiao Liang & PLA Colonel Wang Xiangsui
    - Year: 1999
    - Publisher: Changjiang Literature Press
    - ISBN: 978-7535487407
    - Availability: Amazon
    - Status: 1 Copy in Plaintiff's hands to file.
    - Link: https://www.amazon.com/gp/product/7535487408/ref=ppx_yo_dt_b_asin_title_o01_s00?ie=UTF8&psc=1

- 1 Copy of English-translated version of "Unrestricted Warfare" book
    - Type: Military Multi-Domain Operations Doctrine Text
    - Author: PLA Colonel Qiao Liang & PLA Colonel Wang Xiangsui
    - Year: Translation based on 1999 by China's People's Liberation Army, Beijing (stated in copy)
    - Publisher & Translation: Echo Point Books & Media LLC
    - ISBN: 978-1-62654-305-8
    - Availability: Amazon
    - Status: 1 Copy in Plaintiff's hands to file.
    - Link: https://www.amazon.com/gp/product/1626543054/ref=ppx_yo_dt_b_asin_title_o00_s00?ie=UTF8&psc=1

- 1 Copy of "Stealth War" book
    - Type: Military Multi-Domain OPS Counter-Doctrine Text
    - Author: US Air Force Brigadier General Robert Spalding (Ret)

- o Year: 2019
- o Publisher: Penguin Random House
- o ISBN: 9780593084342
- o Availability: Amazon
- o Status: 1 Copy in Plaintiff's hands to file.
- o Link: https://www.amazon.com/gp/product/0593084349/ref=ppx_yo_dt_b_asin_title_o07_s00?ie=UTF8&psc=1

- 1 Copy of Video Documentary on "The Chinese Communist Party's Ideology and Global Ambitions"
    - o Type: Video Documentary
    - o Author: Robert C. O'Brien
    - o Year: 26 June 2020
    - o Publisher: Whitehouse.gov, US National Security Council
    - o Special Guest: US New Mexico Governor Doug Ducey
    - o Availability: White House Link
    - o Link: https://www.whitehouse.gov/briefings-statements/chinese-communist-partys-ideology-global-ambitions/

- 1 Copy of Video Documentary on "Tracking Down the Origin of the Wuhan Coronavirus"
    - o Type: Video Documentary
    - o Author: Jonathan Phillips
    - o Year: 07 April 2020
    - o Publisher: Epoch Times | NTD
    - o Special Guest: US Brigadier General Robert Spalding
    - o Availability: YouTube
    - o Link: https://www.youtube.com/watch?v=3bXWGxhd7ic

- 1 Google Search result of images with the keyword associated with "xi jinping and bill gates" as inputs.
    - o Type: Search Engine
    - o Author: Miscellaneous
    - o Availability: Google
    - o Link: https://www.google.com/search?q=xi+jinping+and+bill+gates&sa=X&sxsrf=ALeKk00gmNNI97WfM8nZ_bHtXsdfw_Q-kw:1597788496735&tbm=isch&source=iu&ictx=1&fir=q-fwCZY83k4SnM%252CGXCMH6_OmNSjdM%252C_&vet=1&usg=AI4_-kRL6DfhG7dw5TrPTo-rcSMxdxc4Gw&ved=2ahUKEwjLoZj-4aXrAhVJhq0KHZIxCMUQ9QEwAHoECAkQBA&biw=1163&bih=525#imgrc=q-fwCZY83k4SnM

10

- 1 Copy of Invisible Joint Force Multi-Domain Doctrine Tech Deck
    - Type: Military Multi-Domain Doctrine Tech Deck
    - Author: Alejandro Evaristo Perez
    - Year: 2020
    - Publisher: Invisible Forge Inc.
    - Availability: Confidential
    - Status: 1 Copy in Plaintiff's hands to file.
    - SEALED: May request to SEALED documentation

- 1 Copy of Invisible Joint Force Multi-Domain Doctrine White Paper
    - Type: Military Multi-Domain Doctrine Text
    - Author: Alejandro Evaristo Perez
    - Year: 2020
    - Publisher: Invisible Forge Inc.
    - Availability: Confidential
    - Status: 1 Copy in Plaintiff's hands to file.
    - SEALED: May request to SEALED documentation

4.) **Plaintiff expressed Political Speech, which has Preferred Position and always has highest protection by Courts by striking down any law, regulation, executive act, and/or even, simple corporate user agreements.** What is more important and more protected? Political Speech protect by Preferred Position and by our US Constitutional right in US soil that our Service Men and Women lived and died for? Or some user agreement that nobody reads and changes constantly by a corporation that willing choose to associate unethical entities without the customer's control nor the customer's consent without legal representation? <u>The Defendant nor any other corporation is NOT the highest legal authority in the United States of America. The child is not the parent, because it violates logic. The legal government organization (the US government) that issued the certificate of incorporation cannot be supersede its creation (the corporation) in legal authority. Political Speech is the most loved and most protected of all Free Speech expression by US Courts, even above regular Free</u>

Speech, Hate Speech, and its children corporations, because of the Preferred Position Doctrine. As documented by Richard L. Parcelle Jr. (2009), a professor and department head in Political Science at the University of Tennessee, the Preferred Position Doctrine expresses a judicial standard based on a hierarchy of constitutional rights so that some constitutional freedoms are entitled to greater protection than others. In the 20th century, the doctrine represented a preference for individual liberties and civil rights. Thus, the standards the Supreme Court used in determining whether there was an infringement on individual liberties and US Constitutional civic rights, especially associated to the US First Amendment, would be more exacting than the reasonableness tests used in evaluating economic issues. But since, this is a Free Speech violation case by scope and definition, the scope of Preferred Position further increases the need for Court protection the Plaintiff's political statements of criticism of the CCP. The concept of the preferred position doctrine was first mentioned of a hierarchical ordering of constitutional rights came in the majority opinion written by the Honorable Justice Benjamin N. Cardozo (*Palko v. Connecticut (1937)*. He argued that Americans had a handful of fundamental rights that were the "very essence of a scheme of ordered liberty." Ironically, the original concept mentioned in *Schenck v. United States (249 US 47 [1919])*. The Honorable Justice Oliver Wendell Holmes Jr. suggested that the Court should not substitute its judgment for that of the legislature in economic matters and introduced the "clear and present danger" test, which recognized the primacy of the First Amendment and setting the criteria of "Truth/True" to qualify any Free Speech expression for protection. Therefore, the Court continues to have a legal, moral, and ethical

obligation to protect any of the Plaintiff's "Political Speech" against the Defendant, Chinese Communist Party, and other entities due to Preferred Position Doctrine. To summarize all concepts, truthful Political Speech is the most protected speech within our Constitutional right of Freedom of Speech and must be protected by any and all Courts in the USA and the Free World as envisioned by FDR.

## CONCLUSION

The Plaintiff requests that the Court of the Honorable Judge Nancy F. Atlas approves this opposing motion to deny the motivant's motion of DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and any future dismissal motions from the Defendant based on 3 following factors in order to further this case to finalize justice and relief.

1.) The Defendant Lawyers are intentionally breaking the rules and creating delays to obstruct justice with possible negative National consequences.
2.) The Defendant misrepresented the case as a "First Amendment Violation Case" when the Plaintiff's complaint form clearly states that this case is a "Free Speech Violation Case" and the Court wisely approved such scope.
3.) Inversing *Schenck v. United States* logic proves Plaintiff's legal case quickly and favorably, because the Plaintiff has the right to use facts to incite actions that can save others and the Defendant is behaving worse than Charles Schenck.

4.) Plaintiff expressed Political Speech, which has Preferred Position and always has highest protection by Courts by striking down any law, regulation, executive act, and/or even, simple corporate user agreements.

For those reasons, the Plaintiff continues to request the 3 reliefs requested. First, the Plaintiff wants his Linkedin account restored with all 7,000 Connections that consented to connect and peacefully assembled with the Plaintiff via their freewill. <u>Second, $500,000,000 (updated from $250,000,000 due to "bad" faith from Defendant toward Plaintiff. "He must pay for that ewe lamb four times over, because the greedy rich man stole and killed the poor's only ewe sheep to foreigners and had no pity" – 2 Samuel 12:6) of relief to the Plaintiff due the fact that the plaintiff is a US Army Officer whose only job and oath is to protect the US Constitution and the risks associated with such a function.</u> These risks can include death by foreigh state agents and, more apperantly, oppression of proudful misguided industrialists that curse the Plaintiff with negative legalistic counsel versus sending peacemakers. The Plaintiff was ready to mediate a peaceful settling with Defedant to avoid unnecessary legal administration and show some "social grace" toward Bill Gates, Ryan Roslanksy, and the LinkedIn team by avoiding negative media attention and keep the LinkedIn "Golden Goose" healthy with an FDR's "4 Freedoms" diet. Instead, the Defedant show only ill-will and proud behavior toward Plaintiff. <u>The Defendant is very proud of the fact that they violated "Free Speech" of a US War Veteran who fought for our right for Freedom of Speech.</u> The Defedant is very proud of the fact that they virtually assasinated the Plaintiff's avatar in front of his 7,000 global connections. The Defendant was untouched and unmoved by a puniative amount of $250,000,000 making the Plaintiff uncertain about the impact of the relief on the minds of the mega wealthy. Is $250,000,000 pocket change

14

to the mega wealthy? The Defendant refuses to show a metaphorical ounce of humbleness nor any expression of regret for their unethical actions. The Defendant has failed to make a single attempt to settle with Plaintiff. <u>Thus, being the better person and hero of the case, the Plaintiff is humble enough to agree that the Plaintiff underestimated the pununative amount that would emotionally move very proud proud proud proud American mega titans of industry to reconsider their unethical actions and recalibrate their moral compasses toward the Free World.</u> Originally, this large amount was also intented to attract a high quality US Constitutional lawyer to represent the Plaintiff, but failed to materilize due to the risks associated with unethical stakeholders. Such an large relief amount will make any other LinkedIn censorship actions to favor external governments a real topic for the corporate board of directors and remind the LinkedIn leaders to stop behaving as state actors. Third, as repeatably suggested, the Plaintiff continues to purse an update to LinkedIn User Agreement to reflect the Franklin D. Roosevelt's 4 Freedoms, which is a higher standard of Free Speech and Corporate Conduct than LinkedIn's current state actions of elimating the Plaintiff from a public forum by force.

I, the Plaintiff, filed this opposing motion to the best of his humanly abilities as a Pro Se Plaintiff based on the guidance of the Court Procedures of the Honorable Judge Nancy F. Atlas, the local rules, and/or Rule 26(f) of the Federal Rules of Civil Procedures.

God bless America.

_[signature]_ _[signature]_    30 AUG 20

Alejandro Evaristo Perez    Date
Plaintiff | 4:20-CV-02188
Address: 9233 Westheimer, #136, Houston, TX 77063
Phone: (214) 762-0075
Email: alejandro.evaristo.perez@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ALEJANDRO EVARISTO PEREZ § <br> Plaintiff, § <br> § <br> V. § <br> § <br> § <br> LINKEDIN CORPORATION § <br> Defendant. § | CIVIL ACTION NO. <br> 4:20-CV-02188 |

## **CERTIFICATE OF FINANCIALLY INTERESTED PERSONS AND/OR ENTITIES**
Of Plaintiff based on scopes:

**Scope 1:** Parties and Entities directly involved with the Plaintiff in civil case and directly benefit financially from a winning case or has a legal obligation to share award from a winning case.

1.) Self (the Plaintiff, Alejandro Evaristo Perez)
2.) The US Federal Government from taxation of the agreed award.

**Scope 2:** As long it is deemed ethical, legal and/or just by the Court of the Honorable Judge Nancy F. Atlas, Parties and Entities that the Plaintiff is willing to pledge concessions in his civil case, which can directly benefit the Plaintiff's personal safety, cause, reduce frictions, and/or ethical conscience in exchange for financially reward from a winning case and, if allowed, to be legal obligation to share award from a winning case. IRS tax guidelines and IRS requirements take priory over any distribution. All distribution must meet US General Robert Spalding's Stealth War' "Sino Solutions" proposal, ethical standards, "4 Freedoms" Pledges, reduction in yellow journalism, and other conditions respectively to maximize the goodwill and reduce social injustices.

1.) <u>10% of winnings to a 50-year Trust Fund to the Democratic Party</u>
    o Plaintiff is using FDR logic and has to give credit where credit is due.
    o Senator Mark Warner was Plaintiff's LinkedIn Contact with consent.
    o Senator Mark Warner tolerated Plaintiff's cyber existence in LinkedIn.
2.) <u>10% of winnings to a 50-year Trust Fund to the Republican Party</u>
    o Senator John Cornyn help Plaintiff with his VA Benefits.
    o Plaintiff normally gives $100 monthly to the Senator Cornyn as a "Thank You".
3.) <u>10% of winnings to a 50-year Trust Fund to Charities</u>
    o The Plaintiff made the Defendant a promise of "Good Use".
    o The Plaintiff is keeping his word to further prove his goodness of heart.
    o A percentage to War Veteran Charities for my Veteran stakeholders.

- o A percentage to Catholic Charities for my Conservatives stakeholders.
- o A percentage to BlackLivesMatter Movement for my Liberal stakeholders.
4.) <u>10% of winnings to a 50-year Trust Fund to Victims of CCP Atrocities</u>
    - o A percentage to Relief Efforts for American COVID victims.
    - o A percentage to Tibetan Liberation Movement for Tibetan Stakeholders.
    - o A percentage to Stop Organ Harvesting of Falun Gong Members.
    - o A percentage to the New Media Outlets to report CCP Atrocity activities.
5.) <u>$5M "Golden Parachute" for Megan Rapp and Steve Mitby</u>
    - o The Plaintiff would feel better if the young opposing "Rising Star" lawyers had a "consolation" package per as long as the Defendant's legal consul follows to the Court's code of ethics, understand APPENDIX A RULES OF DISCIPLINE RULE, and stop generating unnecessary motions detracting from an orderly Jury Trial in order for a Jury of our peers to decide the outcome in this Court and only in this Court, unless settled prior to a Jury Trial.
    - o The Plaintiff is keeping his word to further prove his goodness of heart.

**Scope 3:** Parties and Entities not directly involved with the Plaintiff in civil case and that may indirectly benefit financially from a winning case nor under no legal obligation to share award from a winning case.

1.) Family
2.) Community
3.) Private Corporations (not publicly traded) owned by Plaintiff:
    a. Data Stocks Inc - https://www.datastocksinc.com/
    b. Invisible Forge Inc - https://invisibleforge.com/
4.) Free Speech Organizations

I, the Plaintiff, certify to have filed "CERTIFICATE OF FINANCIALLY INTERESTED PERSONS AND/OR ENTITIES" as directed in the ORDER FOR PRETRIAL CONFERENCE.

God bless America.

_____     20AUG20
Alejandro Evaristo Perez            _____
Plaintiff 4:20-CV-02188             Date
Address: 9233 Westheimer, #136, Houston, TX 77063
Phone: (214) 762-0075
Email: alejandro.evaristo.perez@gmail.com